UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DEIRDRE IONA SIMS,<br>                Plaintiff,<br><br>       -vs-<br><br>Kilolo Kijakazi,<br>Acting Commissioner of Social Security,<br>                Defendant.¹ | Civil Action No.: 4:20-cv-002892-TER<br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB and SSI on November 30, 2017, alleging inability to work since September 21, 2017. (Tr. 15). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on September 24, 2019, at which time, a vocational expert (VE) and Plaintiff testified. (Tr. 12). The Administrative Law Judge (ALJ) issued an unfavorable decision on December 19, 2019, finding that Plaintiff was not disabled

---

¹ Recently, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

within the meaning of the Act. (Tr. 14-31). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on July 17, 2020, making the ALJ's decision the Commissioner's final decision. Plaintiff filed this action on August 10, 2020. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on March 1, 1976, and was forty-one years old on the alleged onset date. (Tr. 29). Plaintiff alleges disability originally due to problems with legs, swelling, and thyroid issues. (Tr. 89). Only relevant records will be summarized under pertinent issue headings.

**C.     The ALJ's Decision**

In the decision of December 19, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 14-31):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant engaged in substantial gainful activity during the following period: 4th Quarter of 2017 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address the period the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: morbid obesity, right knee osteoarthritis, inflammatory bowel disease, and asthma (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as

> defined in 20 CFR 404.1567(a) and 416.967(a) except can frequently climb ramps; can occasionally climb stairs; never climb ladders, ropes, or scaffolds; never kneel, crouch, or crawl; should not work at unprotected heights, or with unprotected, dangerous moving mechanical parts; should not work in extremes of humidity or in wet conditions; no exposure to pulmonary irritants such as concentrated amounts of dusts, noxious odors, fumes, mists, gases, or poorly ventilated work spaces; never work in extreme cold or extreme heat; may stand for five minutes after 55 minutes of sitting, while remaining on task; and must have ready access to a restroom, which is defined as within five minutes of the work station.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on March 1, 1976, and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from September 21, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues in determining the RFC the ALJ failed to appropriately consider whether Plaintiff could sustain a workweek on a regular and continuing basis, citing to the need for frequent bathroom breaks due to fecal urgency, frequency, control issues, and incontinence. Plaintiff argues

the ALJ erred in analyzing nonsevere impairments of edema, chronic venous insufficiency, carpal tunnel, polyneuropathy, hypertension, sleep apnea, narcolepsy, and anal fistula. Plaintiff argues the ALJ failed to perform a function by function analysis. Plaintiff argues the ALJ erred in determining the RFC as to sedentary work.

Defendant argues the ALJ supported findings with substantial evidence.

**A.     LEGAL FRAMEWORK**

**1.     The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5)

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments

---

20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

5

that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**RFC**

Plaintiff argues in determining the RFC the ALJ failed to appropriately consider whether Plaintiff could sustain a workweek on a regular and continuing basis, citing to the need for frequent bathroom breaks due to fecal urgency, frequency, control issues, and incontinence.

Recently, in a published case, the Fourth Circuit Court of Appeals remanded on a similar issue:

> Third, the ALJ failed to analyze whether Appellant's RFC was impacted by her **need to work near a restroom and take frequent bathroom breaks**. There is **considerable evidence in the record** demonstrating that Appellant regularly experienced **diarrhea and incontinence, as well as drainage** from her anal fissure. Appellant argues that these problems caused her to require **bathroom breaks at a frequent, and often unpredictable, rate**. **Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work**. **And yet, the ALJ did not analyze Appellant's need for regular bathroom breaks**. Instead, the ALJ simply noted that Appellant "accommodate[d] her drainage and accidents by using pads." J.A. 16. That finding misses the point. Pads may keep Appellant's clothes clean and help reduce the potential for embarrassing accidents. However, they do not save Appellant any trips to the bathroom, since the pads need to be changed once they are soiled. **On remand, the ALJ should evaluate the frequency at which Appellant needed to use the bathroom and analyze how that restriction impacted her ability to work.**

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021)(emphasis added).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at

*2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ here found IBD as a severe impairment and anal fistula as a nonsevere impairment. (Tr. 18). The RFC determination included "ready access to a restroom, which is defined as within five minutes of the work station." (Tr. 25). However, the RFC narrative did not explain the inclusion of this access limitation or discuss sustaining a forty-hour workweek with the <u>frequency</u> of such access. The following includes the ALJ's discussion related to this issue:

> The claimant has also sought treatment at Carolinas Medical Alliance Gastroenterology. These treatment notes show that she has been diagnosed with ulcerative colitis without complications and irritable bowel syndrome. The claimant has reported limited related symptoms at times including constipation and diarrhea (Exhibits 7F, 13F, 19F and 32F).
>
> In July 2018, the claimant was treated at the emergency room for complaints of diarrhea and abdominal pain (Exhibits 8F and 20F). In August 2018, the claimant was seen at the emergency room for abdominal pain. She was diagnosed with recurrent colitis due to Clostridium difficle, hypertension, acute hypokalemia, hypomagnesemia, and abdominal pain. She was treated and released in stable and

> improved condition (Exhibit 10F). In October 2018, the claimant was seen at emergency room due to a buttock abscess (Exhibit 12F). Later in October 2018, the claimant underwent anal fistulectomy with seton placement and debridement of right perianal abscess (Exhibits 12F and 25F). In March 2019, the claimant was seen for a follow-up office visit. She reported minimum pain concerning her annual fistula. Her treating physician indicated that it was almost healed (Exhibit 28F).

(Tr. 22-23).

> Dr. Aduako hand wrote that the claimant has severe Crohn's disease, with almost daily episodes of GI bleed/complications including anorectal abscesses (Exhibit 37F). The undersigned finds this statement from Dr. Aduako to be unpersuasive since the medical evidence of record shows intermittent symptoms. As one example, at an office visit in August 2019 at MUSC, which was discussed above, the claimant specifically denied constipation and diarrhea. She reported that her symptoms have waxed and waned (Exhibit 40F/12).[4]

(Tr. 24).

> Regarding colitis and irritable bowel syndrome, the claimant reported that she can have an accident at any time. She indicated that she keeps clothes with her all the time and that it is uncontrollable. The claimant testified that she needs a bathroom break eight to nine times a day; and sometimes she can go more than that and it just depends on that day. She reported that she wears protective undergarments at night and wears a pad during the day.

(Tr. 27).

> The claimant stated that when she was working, she was having an accident only a couple times (concerning her colitis/irritable bowel syndrome). When asked why she doesn't wear Depends (adult diapers) during the daytime, she indicated she tries to wear a pad type thing and that Depends are expensive, so she tries to save them if she can. The claimant stated that she is still having accidents during the daytime and that she has talked to her doctor about this.[5]

---

[4] It is noted that this visit was with her endocrinologist, Dr. Pande, who was treating her for hypothyroidism and the reference was to what appears to be symptomology related to that condition. It is further noted that the same office visit notes under review of systems indicates positive for diarrhea and constipation. (Tr. 2072).

[5] Plaintiff testified sometimes she has diarrhea or sometimes solid stool but it is "like uncontrollable," so she keeps clothes and padding to change with her. (Tr. 62). "I can have an incident like anytime." The ALJ asked how many days a week Plaintiff had problems where she

9

(Tr. 28).

Pertinent here, the ALJ noted that Plaintiff reported the need for bathroom breaks 8-9 times a day and that "the record does not show that she has reported this level of symptoms." (Tr. 28). The record includes the following. On May 23, 2019, Dr. Maxwell noted "stools between 4x and 10x per day. Generally loose but occ formed." (Tr. 2018). "Notably, she reports some control issues. She states she has fecal urgency and smearing- with incontinence at times." (Tr. 2018). The ALJ's statement that the record does not show that Plaintiff reported bathroom breaks 8-9 times a day is simply inaccurate. (Tr. 28, 2018). Plaintiff's treating specialist noted up to 10 times a day plus urgency, control issues, and incontinence. (Tr. 2018). The diagnosis/assessment by the treating specialist included ulcerative colitis, symptomatic fistula, fecal urgency, and smearing. (Tr. 2019). The visit notes were supported with abnormal objective findings of fistula, stool on the perianal skin, mildly tender, and mild drainage. (Tr. 2019, 2021). All of the same reports and assessment were noted again on June 24, 2019. (Tr. 2020). Plaintiff had surgery and a large keyhole defect was found from the primal anal canal to just beyond the anal verge and it was apparent the drainage Plaintiff was experiencing was likely coming from the keyhole defect. (Tr. 2024). Even after the surgery, Dr.

---

would need clothes and Plaintiff answered: "I keep clothes all the time." (Tr. 62). Plaintiff testified the multiple surgeries to repair did not truly fix and then a third doctor said he could not do the procedure because it was not cut or did not heal the right way and he stated there was nothing he could do about Plaintiff's bowel control issues. (Tr. 63). The ALJ asked Plaintiff if she had problems every day with control; Plaintiff answered: "It's pretty much like every day." The ALJ asked how many times she needed a bathroom break; Plaintiff answered: "It all depends. At least maybe eight or nine sometimes, maybe but sometimes I can go more than that. It just all depends on the date." (Tr. 63). Plaintiff keeps gauze with her all the time because it drains blood or feces. Plaintiff testified she had an open place. (Tr. 63). Plaintiff wears Depends at night and pads during the day. (Tr.64). When Plaintiff was still working, Plaintiff had an accident at work a couple of times. (Tr. 75). Plaintiff testified she still has accidents during the day time now at home. (Tr. 76). Plaintiff can know it is coming but cannot control it. (Tr. 76). Plaintiff told her doctor about it and she is on medication. (Tr. 77).

Maxwell noted Plaintiff "continues to stool between 4x and 10x per day. Generally loose but occ formed." "She states she frequently has fecal urgency and smearing with incontinence at times." (Tr. 2027). Assessment was fecal urgency post surgery. (Tr. 2028). Exam was deferred.

The ALJ's finding that "the record does not show that she has reported this level of symptoms" as to bathroom usage frequency is not supported by substantial evidence in the record.

In line with *Dowling*, the ALJ should make a finding as to the frequency of bathroom breaks and analyze whether the RFC was impacted by a need to take frequent bathroom breaks. "Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021).

Based on the foregoing record and applicable published case law, the court can not find that the ALJ's decision was supported by substantial evidence and remand is appropriate. On remand, the ALJ should evaluate the frequency at which Plaintiff needed to use the bathroom and analyze how that restriction impacted the ability to work.

Because the Court finds the ALJ's analysis with respect to the above issues is a sufficient basis to remand the case to the Commissioner, the undersigned does not specifically address Plaintiff's additional allegations of error. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Upon remand, the Commissioner should consider each of Plaintiff's allegations of error in Plaintiff's brief. "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

### III.  CONCLUSION

The court is constrained by its limited function under 42 U.S.C. § 405(g). Our function is

to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). As discussed above, the ALJ's decision is not based on substantial evidence.[6]

"We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984)(citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir.1977)). "The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say h[er] determination was supported by substantial evidence." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007)(citing *Arnold v. Sec'y*, 567 F.2d 258, 259 (4th Cir.1977) ("The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty....")).

It may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record

---

[6] Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir.2013).

12

presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.

                                                      s/Thomas E. Rogers, III
September 3, 2021                            Thomas E. Rogers, III
Florence, South Carolina                United States Magistrate Judge